*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* DEMONTIGNY/LAUBE, Minors.

UNPUBLISHED
May 9, 2019

No. 345760
Bay Circuit Court
Family Division
LC No. 16-012245-NA

Before: BOONSTRA, P.J., and METER and FORT HOOD, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order terminating her parental rights to two minor children, CD and FL, under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g), and (j).[1] We affirm.

## I. DISPOSITION

### A. STATUTORY GROUNDS

Respondent first argues that the trial court erred by finding statutory grounds to terminate her parental rights. "In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). We review for clear error a trial court's ruling that a statutory ground for termination has been proved by clear and convincing evidence. *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296–297; 690 NW2d 505 (2004).

---

[1] FL's father was, originally, a respondent in the proceedings below, but he released his parental rights to FL. CD's father is deceased.

Here, the trial court terminated respondent's rights under MCL 712A.19b(3)(c)(*i*), (c)(*ii*), (g) and (j), which provide:

The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

* * *

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

(*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

* * *

(g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

Regarding subsection (c)(*i*), the adjudication was primarily based on respondent's issues with alcohol abuse and domestic violence. On several occasions between March 2016 and December 2016, police were called to respondent's home after respondent and FL's father, GL, had consumed alcohol and engaged in domestic violence. Indeed, although respondent's conduct resulted in a domestic-violence conviction, the domestic-violence incidents continued to occur. Respondent was offered services at a shelter, but was terminated from the program because she did not comply with its rules. Respondent pleaded no contest to certain instances of alcohol abuse and domestic violence and the court assumed jurisdiction over the children in December 2016.

The children were removed from respondent's home in January 2017. Nearly one year later, in December 2017, respondent was still dating GL. Respondent initially denied that the relationship was continuing, but eventually confessed as much to the court. Respondent also continued to abuse alcohol during this time. Respondent was admitted to a hospital twice in August 2017 for extreme intoxication. In November 2017, respondent left her inpatient alcohol-treatment program against the advice of staff. She was otherwise inconsistent in her compliance with the service plan. Accordingly, in December 2017, the trial court indicated that petitioner should pursue termination of respondent's parental rights. The termination hearing was set for May 2018.

In January 2018, respondent was arrested for operating a vehicle while under the influence of alcohol (OWI) and obstructing a police officer. She was convicted of these offenses and lost her driver's license and her health-care job. Following the OWI incident, respondent started to make some progress on her domestic-violence and substance-abuse issues. Respondent finally ended her relationship with GL in January 2018. Respondent reengaged with her therapist and had begun to establish a support system. She had found a new job as a fast-food worker and was attending group recovery sessions for her substance-abuse issues. Nevertheless, in March 2018, respondent was observed ordering a beer at a bar. Additionally, respondent had missed several sessions for her recovery group. When asked at the termination hearing whether she was ready for her children to be returned to her care, respondent stated, "I still think I need to work on . . . a few things." This sentiment was echoed by her therapist, who testified that, despite respondent's recent success, respondent's issues concerning relationships had only "been touched on" during therapy and that the two had not yet had time to delve into the issues of trauma and domestic violence. Respondent's therapist recommended at least a year of therapy to deal with these issues.

On this record, we are not left with a definite and firm conviction that the trial court erred by finding that the conditions supporting adjudication continued to exist. Preliminarily, we note that respondent's progress occurred only after she was threatened with termination of her parental rights. Although her recent progress is commendable, respondent's long history of substance-abuse and domestic violence indicates that this recent change will not be an easy one. Indeed, respondent's progress was not without its shortcomings, given that respondent was observed ordering a beer just two months before the termination hearing and had been absent from several group therapy sessions. Although respondent had been consistently attending therapy, she had not yet addressed the relationship issues that led to the repeated instances of domestic violence.

Similarly, we are not left with a definite and firm conviction that the trial court erred by finding that the conditions were unlikely to improve within a reasonable time considering the children's age. Particularly relevant to this consideration is the urgency of the children's need for permanence and stability. Respondent's children witnessed the domestic violence and substance abuse. CD had been highly traumatized from the violence and, as a result, needed substantial structure and did not like change. Testimony indicated that CD liked things to be "quiet" and "restful," and that the whole process was "wear[ing] on him." In addition, testimony clearly established that FL was more bonded with his foster mother than with respondent. On the last day of the termination hearing, the children's guardian ad litem aptly noted that, because of FL's young age, he had been in foster care considerably longer than he had lived with

respondent. The guardian ad litem stated that "any time we move visits or increase visits [FL] he struggles because he is so bonded to the caregivers that . . . he now considers his parents." Accordingly, the record makes clear that the children needed permanency in the near future. Because respondent had only recently begun to address her substance-abuse and mental-health issues and would need at least a year of therapy to address her domestic-violence issues, respondent was unlikely to able to resolve the conditions leading to adjudication within a reasonable time, considering the children's need for stability.

Therefore, we conclude that the trial court did not err by finding that MCL 712A.19b(3)(c)(*i*) supported termination. Given that "the petitioner need only establish one ground for termination," we need not address MCL 712A.19b(3)(g) or (j). *In re Trejo*, 462 Mich 341, 360; 612 NW2d 407 (2000).

## B. BEST INTERESTS

Next, respondent argues that termination was not in her children's best interests. "If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). "[W]hether termination of parental rights is in the best interests of the child must be proven by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). "The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). "To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include 'the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home.' " *Id*., quoting *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012). Other relevant factors include any relevant "history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id*. at 714. We review for clear error the trial court's finding that termination is in a child's best interests. *In re Trejo*, 462 Mich at 356-357.

The testimony was clear that FL—who had been in foster care longer than he had been with respondent—was more bonded to his foster family than to respondent. The court-advocated special advocate (CASA) testified that FL was "[v]ery, very comfortable" in his foster home and had made great progress there. In addition, FL had been resisting visitations with respondent. His foster parents were willing to adopt him and his foster mother had a cordial relationship with CD's foster mother and arranged sibling visits.

For much of the case CD had expressed a desire to continue living with his relative foster mother. CD did express a recent desire to live with respondent, but the testimony was clear that he was a child who had suffered a lot of trauma and required a particularly large amount of stability. His foster mother, WC, implemented a routine to give him stability, and she was willing to adopt him. The CASA stated that WC was "an expert at knowing how to handle [CD's] behavior" and that CD felt "very safe" and "stable" in her home. CD's therapist testified

that CD was bonded to WC and looked to her for comfort. At times, CD did not want to attend visits with respondent.

As noted previously, the children were in need of stability and permanency within the near future. Considering the stable, pre-adoptive environments of the children, their very strong bonds with their foster parents, and the fact that respondent would need at least a year to progress with her treatment, we are not left with a definite and firm conviction that the trial court erred by determining that termination was in each child's best interests.

## C. OTHER CHALLENGES

Respondent challenges the trial court's findings on two additional grounds. First, respondent argues that her case should have been decided by a jury—not the trial court—and that the trial court erred by denying her request for a jury. We disagree. "Respondents may demand a jury determination of the facts in the adjudicative phase, but no jury is allowed at the dispositional hearings." *In re Brock*, 442 Mich 101, 108; 499 NW2d 752 (1993); see also *In re Sanders*, 495 Mich 394, 406; 852 NW2d 524 (2014).

Second, respondent contends that a reversal or remand is appropriate because the trial court delayed in issuing its termination opinion and thereby violated both MCL 712A.19b(1) and MCR 3.977(I)(1). Under these authorities, the trial court is required to render its findings of fact on the record or in writing within 28 days after the taking of final proofs but no later than 70 days after the commencement of the termination hearing. MCR 3.977(I)(1), MCL 712A.19b(1). We agree with respondent that the trial court's opinion was untimely: the trial court missed the 28-day period by 47 days and the 70-day period by 41 days. Nonetheless, we do not believe that this error warrants reversal or remand. This Court has consistently interpreted the court rule "as not requiring dismissal" where its time limits have been violated. *In re TC*, 251 Mich App 368, 370-371; 650 NW2d 698 (2002).[2] Especially here, where the children have a demonstrated need for permanency and stability, remanding for further proceedings would not further substantial justice. See MCR 2.613(A) (stating that an error is not grounds for disturbing the order unless refusal to do so would be inconsistent with substantial justice). Substantial justice is not served by meeting delay with more delay. *In re TC*, 251 Mich App at 371.

## II. ADJUDICATION

Finally, respondent argues that the order of termination must be reversed because the trial court violated MCR 3.971(B)(4) by failing to inform her during the plea proceedings at adjudication that her pleas could be used as evidence during later proceedings to terminate her

---

[2] The 28- and 70-day requirements were previously codified under MCR 5.974(F). Subchapter 5.900 was deleted from the court rules effective May 1, 2003, and many of its provisions, including the provision at issue, were relocated to subchapter 3.900. Although our prior opinions interpret MCR 5.974(F), because the relevant substance of the court rule has not changed, those opinions retain their precedential value.

parental rights. [3] We review this unpreserved issue for plain error affecting respondent's substantial rights. *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). Reversal is warranted only when the plain, forfeited error resulted in an improper termination or affected the fairness, integrity or public reputation of judicial proceedings independent of the outcome. See *id*. at 9.

MCR 3.971(B)(4) requires that, before the trial court may accept a plea of no contest, the trial court must advise the respondent on the record "of the consequences of the plea, including that the plea can later be used as evidence in a proceeding to terminate parental rights if the respondent is a parent." At the adjudication hearing, the referee informed respondent that she had the right to a jury trial regarding whether the court should take jurisdiction over the children and the right to present witnesses. The referee then explained to respondent that, by entering a plea, she was "giving up these rights and all the rights that go along with a trial." The referee continued that, by entering a plea, respondent was telling the court that she was willing to start working on the service plan and that, if respondent did not benefit from the services and was not able to provide a proper home for her children within a reasonable time, then the court could entertain a petition to terminate respondent's parental rights. Respondent then entered the aforementioned no-contest pleas.

The referee erred by not specifically informing respondent that the pleas could be used as evidence in a hearing on the termination of her parental rights. See *In re Mitchell*, 485 Mich 922; 773 NW2d 663 (2009); *In re Hudson*, 483 Mich 920, 928-929; 763 NW2d 618 (2009).[4] Nevertheless, we do not believe that this error resulted in an improper termination or affected the fairness, integrity or public reputation of judicial proceedings independent of the outcome. Accordingly, we conclude that respondent is not entitled to relief.

---

[3] Petitioner argues that this challenge constitutes an improper collateral attack on the trial court's assumption of jurisdiction. Whether respondent can challenge jurisdiction on the basis of an inadequate advice of rights presents a close question. Compare *In re SLH*, 277 Mich App 662, 668; 747 NW2d 547 (2008) (noting that respondents are generally prohibited from collaterally attacking jurisdiction after the filing of a supplemental petition for termination); with *In re Mitchell*, 485 Mich 922; 773 NW2d 663 (2009) (remanding after termination in part because of errors at the adjudicative stage); *In re Hudson*, 483 Mich 920, 928-929; 763 NW2d 618 (2009) (same). Nevertheless, because we conclude that the error does not warrant relief under plain-error review, we need not address this question.

[4] Both cases remanded for further proceedings. Nonetheless, in both cases, unlike the present case, the error was compounded by errors that tended to deny the respondent the right to counsel. See *In re Mitchell*, 485 Mich 922; *In re Hudson*, 483 Mich 928-929. As will be explained, we conclude that a different result is necessary under the plain-error rule when the failure to adhere strictly to MCR 3.971(B)(4) appears in the absence of other serious errors.

Critically, respondent has not presented this Court with any evidence[5] showing that she would not have entered the plea had she been informed that it could be used as evidence at the termination hearing. Indeed, on the current record, respondent's assertion that she would do so is doubtful. Respondent was informed that her plea could eventually lead to a petition to terminate her parental rights, particularly if she did not benefit from her service plan, which would inevitably be fashioned to address the allegations in the petition. Thus, while respondent was not specifically informed that the plea could be used as evidence, she understood that her failure to address the allegations in the petition could lead to the termination of her parental rights. Being so informed, respondent choose to enter her no-contest plea and begin working on her service plan instead of challenging the petition. Having been informed that not contesting the plea could put her on a path to the termination of her parental rights, we find it unlikely that respondent would have abstained from entering the plea had she been informed that the plea could be used as evidence in the termination hearing.

Moreover, it is clear that the referee, in assuming jurisdiction over the children, was focusing on the issues of substance abuse and domestic violence. Evidence of police involvement for domestic violence, concerning an incident when FL was in the home, was elicited at a preliminary hearing before adjudication. Also elicited was that respondent had a history of being "volatile" after drinking. Her own attorney stated that respondent had "a big issue" with drinking in the past, and a Department of Health and Human Services employee affirmed that respondent was an alcoholic. The children's guardian ad litem at this hearing referred to "a continuing pattern of drinking and domestic violence." It is true that these statements were not provided under oath, but, given (1) the above information, which was elicited even before the adjudication hearing; (2) the large amount of evidence regarding alcohol abuse and domestic violence that petitioner presented throughout the proceedings; and (3) the fact that some of the information regarding these issues was supported by police records and criminal records, it is not reasonable to conclude that if respondent had not pleaded to the petition, the court would not have assumed jurisdiction over the children by way of trial. Accordingly, it is not reasonable to conclude that any error regarding MCR 3.971(B)(4) affected respondent's substantial rights; resulted in adjudication of an "innocent" parent; or affected the fairness, integrity, or public reputation of judicial proceedings. Thus, despite the error, respondent is not entitled to relief. [6]

---

[5] Respondent has not even offered an affidavit attesting that she would have refrained from making the plea had she known it could be used as evidence at the termination hearing.

[6] Respondent also argues that the court should have informed her that hearsay evidence could be used at the termination hearing in relation to the issues that led to adjudication. See MCR 3.977(H)(2). Nonetheless, while MCR 3.971(B)(4) indicates that the court must advise the respondent "of the consequences of the plea," it does not require the court to specifically advise the respondent about the use of hearsay at the termination hearing. As noted, the referee *did* inform respondent of many of the "consequences of the plea," and respondent has not shown entitlement to relief regarding this "hearsay" issue for the same reasons that she has not shown

## III. CONCLUSION

The trial court erred at the adjudicatory stage by failing to inform respondent that her plea could be used as evidence at the termination hearing.  At the dispositional stage, the trial court erred by failing to issue its opinion within the time frames set by MCR 3.977(I)(1) and MCL 712A.19b(1).  Neither error entitles respondent to relief.  Because we are not left with a definite and firm conviction that the trial court erred in its statutory-grounds or best-interest analysis, we affirm the termination of respondent's parental rights.


/s/ Mark T. Boonstra
/s/ Patrick M. Meter
/s/ Karen M. Fort Hood

---

entitlement to relief based on the referee's failure to explicitly say that the pleas could later be used as evidence in a proceeding to terminate parental rights.